54 F.3d 774
 75 A.F.T.R.2d 95-2197
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re REFLECTIONS, A COMMERCIAL SERVICE COMPANY, INC., Debtor.
REFLECTIONS, A COMMERCIAL SERVICE COMPANY, INC., Plaintiff-Appellant,
v.
INTERNAL REVENUE SERVICE, Defendant-Appellee,
and
Debera Frick Conlon, Trustee.
 No. 94-2080.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 8, 1995.
Decided: May 16, 1995.
 
 ARGUED: Beril M. Abraham, GOLDBLATT, LIPKIN & COHEN, P.C., Norfolk, VA, for Appellant.
 Anita K. Henry, Assistant United States Attorney, Norfolk, VA, for Appellee.
 ON BRIEF: Helen F. Fahey, United States Attorney, Norfolk, VA, for Appellee.
 Before HALL and MOTZ, Circuit Judges, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Reflections, A Commercial Service Company, Inc., a debtor-inpossession in a Chapter 11 bankruptcy proceeding, appeals an order of the district court affirming the bankruptcy court's entry of a "consent order" prepared by the Internal Revenue Service but not endorsed by the debtor. We reverse and remand.
 
 I.
 
 2
 Reflections (the debtor) filed a proposed plan for reorganization under Chapter 11. The Internal Revenue Service (IRS) filed an objection to the proposed plan. The IRS asserted that the plan failed to treat it as a secured creditor for unpaid taxes for which it had filed a tax lien.
 
 
 3
 According to the debtor, its counsel, Beril Abraham, met with Anita Henry, the Assistant United States Attorney representing the IRS, and agreed on a simple, two-point settlement. The IRS's claim would be treated as a secured claim to the extent covered by the tax lien, and as a priority unsecured claim for the balance.
 
 
 4
 At the plan confirmation hearing, Abraham informed the court that a settlement had been reached and advised that a proposed consent order would be forthcoming. The bankruptcy court directed that the order be submitted within ten days, i.e. on or before April 22, 1994. The IRS, as is its practice, undertook to draft the order.
 
 
 5
 On April 18, Henry mailed and sent by facsimile a proposed order to Abraham. This proposed order went beyond the bare points on which oral agreement had been reached. According to the IRS, these other provisions were merely "standard" IRS boilerplate, and Henry had assumed that Abraham, with whom she had a prior course of dealing, knew that these provisions would be included.
 
 
 6
 Abraham did not sign the proposed order; moreover, he apparently failed to call Henry and make his objections known. Henry made several calls to Abraham's office and had her secretary make others, but received a response only once: on April 21, when Abraham's secretary delivered a message that Abraham was not ready to sign the order.
 
 
 7
 On April 22, the IRS submitted the "consent order" to the bankruptcy court. In a cover letter, Henry informed the court of her difficulties contacting Abraham, and she explained that the order was submitted solely to comply with the court's deadline. She did not request entry of the order at that time.
 
 
 8
 On April 25, without a hearing, the bankruptcy court entered the "consent order." On April 28, the court received the debtor's objection to the consent order and request for a hearing. When the debtor discovered that the order had been entered, it filed a motion to reconsider and again asked for a hearing. In a brief order dated May 3, 1994, the bankruptcy court denied reconsideration.
 
 
 9
 The debtor appealed to the district court, which affirmed the bankruptcy court's order on the ground that the order was within the broad equitable powers of the bankruptcy court under 11 U.S.C. Sec. 105.
 
 
 10
 The debtor appeals.
 
 II.
 
 11
 If the IRS's recitation of facts is correct, some sort of discipline of Abraham might have been appropriate in the bankruptcy court. He should have promptly called Henry to discuss whatever objections he had in the proposed order. If the parties were then unable to reach agreement, they could have so informed the bankruptcy court before the April 22 deadline.
 
 
 12
 Nonetheless, the fact of the matter is that there was never a "consent" to the consent order, and, unless there is some exceptional theory to validate it, it should not have been entered. See E.D. Va. Local Bkrpcy. R. 112(D)--"the proponent shall include with a proposed consent order a Certification of Endoresement stating that all necessary parties have endorsed the proposed order." No such certification was or could have been submitted here.
 
 
 13
 On the contrary, where an issue has been resolved after a hearing or trial, the proponent of a proposed order need only include a certificate of service. Local R. 112(C). The purposes of these different rules are self-evident. Where an issue has been tried, the drafter of the order is just assisting the court, because the court itself can draft and enter whatever order it deems appropriate in light of its findings. A consent order, on the other hand, is the product of a settlement--a contract[1]--between the parties. If there is no assent by a party, then there is obviously no contract.
 
 
 14
 The district court relied on 11 U.S.C. Sec. 105 to uphold the "consent order" here. That statute states,
 
 
 15
 The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
 
 
 16
 There is no indication in the bankruptcy court's order denying reconsideration that it had used its 11 U.S.C. Sec. 105 power to justify entry of the "consent" order.[2] Indeed, the quick (three days) turnaround between submission and entry of the order suggests that the bankruptcy court read "consent order" on the IRS's submission and signed it as a matter of routine.
 
 
 17
 There is some doubt that the Sec. 105 equitable power extends to forcing parties to accept a disposition of a disputed matter without a hearing. In any event, we need not even get that far. The court should not impose such extraordinary relief without giving Abraham or the debtor an opportunity to answer the claim of abuse of process. Here, the order was entered before the debtor had reasonable time to even object in writing.
 
 
 18
 In addition, though Abraham's alleged failure to communicate with opposing counsel is inexcusable, the IRS does not appear to be blameless here. It admits that it included its "standard boilerplate" in the proposed order without receiving actual consent to it, and "standard boilerplate" tends to be highly favorable to the drafter.[3] The judgment is reversed, and the case is remanded to the district court for a further remand to the bankruptcy court with instructions to vacate the "consent order."
 
 REVERSED AND REMANDED
 
 
 [1]
 Analogous Virginia law recognizes that a consent order is just a judicial sanction of a private contract, Montagna v. Holiday Inns, Inc., 221 Va. 336, 269 S.E.2d 838, 844 (1980), and, where the parties have agreed that a writing is a prerequisite to a binding agreement, no contract exists until the writing is made and executed. Valjar, Inc. v. Maritime Terminals, Inc., 220 Va. 1015, 265 S.E.2d 734, 737 (1980)
 
 
 [2]
 The bankruptcy court said simply, "There must be an end to hearings and reconsiderations. The remedy here is an appeal if the debtor feels aggrieved."
 
 
 [3]
 The paragraphs to which the debtor objected more or less exempt the IRS's claims from all meaningful effects of the bankruptcy proceeding. Paragraphs 3 and 4 preserve the IRS's full powers to collect the unpaid taxes as if there had been no bankruptcy filing. Paragraph 5 declares that the debtor and its property remain liable for unpaid priority tax claims. In paragraph 6, the IRS magnanimously "agrees that the debtor is entitled to a discharge of debts," but then insists that the discharge of the debtor's tax debt shall not become effective until the taxes are paid (at which time, of course, no discharge would be needed)